UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 19- 81700-CIV-MIDDLEBROOKS/BRANNON

HEALTHCARE RESOURCES MANAGEMENT
GROUP, LLC,

      Plaintiff,

v.

ECONATURA ALL HEALTHY WORLD, LLC,
MEDTERRA CBD, LLC, REJUVENOL
LABORATORIES, INC., and NOXENO
HEALTH SCIENCES, INC.,

      Defendants.

_____/

**DEFENDANT MEDTERRA CBD, LLC'S MOTION TO DETERMINE ENTITLEMENT TO AN
AWARD OF PREVAILING PARTY ATTORNEY'S FEES FROM
PLAINTIFF HEALTHCARE RESOURCES MANAGEMENT GROUP, LLC**

Defendant Medterra CBD, LLC ("Medterra"), pursuant to Rule 54(d)(2)(A) and Local

Rule 7.3(a), moves this Court to determine entitlement to an award of prevailing party attorney's

fees from Plaintiff Healthcare Resources Management Group, LLC, and states as follows:

I.    **INTRODUCTION**

Plaintiff Healthcare Resources Management Group, LLC ("Plaintiff") sued Medterra for

an alleged misappropriation of Plaintiff's proprietary formulation for a pain cream containing

cannabidiol ("CBD"). Medterra purchased a CBD-infused cooling cream from Plaintiff for several

months on a "white label" basis, in order to sell the cooling cream under Medterra's own brand.

The cream formulation, however, was developed by Defendant EcoNatura All Healthy World,

LLC ("EcoNatura") and manufactured by Rejuvenol Laboratories, Inc. ("Rejuvenol"). Plaintiff

was a mere intermediary, acting as an agent or broker on behalf of EcoNatura, in selling the latter's

cream to Medterra.

Medterra CBD, LLC
Motion for Attorney's Fees

In 2019, Medterra decided to discontinue its relationship with Plaintiff and, instead, began purchasing EcoNatura's cream directly from EcoNatura. Angered by the loss of revenue for serving as the "middleman" between Medterra and EcoNatura, Plaintiff retaliated by filing this action.

In its Amended Complaint, Plaintiff alleged that EcoNatura "misappropriated" Plaintiff's purported "secret formula" for the cooling cream that EcoNatura sold to Medterra. Based on this core allegation, Plaintiff asserted three claims against Medterra under the Florida Uniform Trade Secrets Act ("FUTSA"), chapter 688, Florida Statutes; the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), sections 501.201 et seq., Florida Statutes.

On May 21, 2020, when Plaintiff failed to retain new counsel after its prior counsel withdrew, the Court dismissed this case without prejudice due to Plaintiff's failure to prosecute its case. [D.E. 56.] This order of dismissal renders Medterra a prevailing party and, under Florida law, Medterra is entitled to recover its reasonable attorney's fees from Plaintiff. Accordingly, for the following reasons, Medterra asks this Court to find that Medterra is entitled to an award of its reasonable attorney's fees pursuant to section 688.005, Florida Statutes.

II.     **BASIS FOR ENTITLEMENT**

        A.      **Final Order Giving Rise to Entitlement**

On May 21, 2020, the Court dismissed this case without prejudice for failure to prosecute, pursuant to Rule 41(b). [D.E. 56.]

Medterra CBD, LLC
Motion for Attorney's Fees

## B.      Statutory Basis for Entitlement

Medterra is entitled to its reasonable attorney's fees for successfully defending against Plaintiff's claim for misappropriation of trade secrets under FUTSA, pursuant to section 688.005, Florida Statutes, which states in pertinent part as follows:

> If a claim of misappropriation is made in bad faith . . . the court may award reasonable attorney's fees to the prevailing party.

As set forth below, Medterra is not only the prevailing party, but also submits that Plaintiff's claim of misappropriation was made in bad faith.

## C.      Medterra is a Prevailing Party in This Case

Where a "claim for attorneys' fees sounds in state law," the Court should "apply the substantive law of Florida, the forum state." *Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002).[1]

Under Florida law, a defendant may "prevail" even when a case is dismissed without prejudice. *See, e.g., Valcarcel v. Chase Bank USA, NA*, 54 So. 3d 989, 990 (Fla. Dist. Ct. App. 2010) (concluding that defendant was a prevailing party after dismissal of plaintiff's claims due to misconduct of counsel and noting that an "adjudication on the merits" was unnecessary). In this regard, the Eleventh Circuit has recognized this distinction between Florida and federal law, where federal law does not consider a party prevailing upon achieving a dismissal without prejudice. *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 F. App'x 796, 801 (11th Cir. 2014) ("Here, Defendant is the prevailing party under Florida law, as the

---

[1] Medterra concedes that, under federal law, it is not a prevailing party. *See, e.g., United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1303 (11th Cir. 2019) ("The claimants have not substantially prevailed because a dismissal without prejudice places no 'judicial *imprimatur*' on 'the legal relationship of the parties,' which is 'the touchstone of the prevailing party inquiry.'") (citation omitted). Therefore, Medterra does not claim entitlement to attorney's fees pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(D).

3

Medterra CBD, LLC
Motion for Attorney's Fees

district court dismissed Plaintiff's action against Defendant, despite the fact that the dismissal was without prejudice.").

With the exception of dismissals on the basis of jurisdiction or venue, a dismissal without prejudice renders the opposing party the "prevailing party" under Florida law.  For instance, in *Henn v. Ultrasmith Racing, LLC*, 67 So. 3d 444 (Fla. Dist. Ct. App. 2011), the Fourth District Court of Appeal addressed the consequences of an artificial entity failing to retain counsel to represent it in litigation – the same scenario the Court faced in this case.  In *Henn*, counsel for the plaintiff – a limited liability company – withdrew its representation.  The trial court set a status conference and ordered the plaintiff to appear through counsel.  At the status conference, the plaintiff's "principal and managing agent" appeared without counsel and attempted to file a notice of voluntary dismissal.  The trial court refused to accept the voluntary dismissal, given that the plaintiff was an artificial entity and later deemed its dismissal of plaintiff's claims a sanction for failing to appear through counsel.  The trial court later rejected, however, the defendant's motion for attorney's fees, finding that "the dismissal was without prejudice" and "the litigation did not necessarily end with the trial court's order of dismissal."  *Id.* at 445.  The Fourth District reversed, concluding that "a defendant may 'prevail' even where the case is not dismissed on the merits."[2] *Id.*

Similarly, under Florida law, a dismissal for a plaintiff's failure to prosecute, in particular, also renders the defendant a prevailing party.  *See, e.g., Baratta v. Valley Oak Homeowners Ass'n at the Vineyards, Inc.*, 891 So. 2d 1063, 1065 (Fla. Dist. Ct. App. 2004) (noting that the defendant was "the prevailing party when [the plaintiff's] claim was dismissed for failure to prosecute");

---

[2] In the alternative, the court also ruled that the plaintiff's attempt to dismiss the case voluntarily rendered the defendant the prevailing party.  67 So. 3d at 445.

Medterra CBD, LLC
Motion for Attorney's Fees

*accord Vivot v. Bank of Am., N.A.*, 115 So. 3d 428 (Fla. Dist. Ct. App. 2013).  Under Florida law, any dismissal for lack of prosecution is without prejudice.  *See, e.g., Green v. Sun Harbor Homeowners' Ass'n*, 730 So. 2d 1261, 1262 n.2 (Fla. 1998) ("Of course, a dismissal pursuant to rule 1.420(e) is without prejudice.").

The same analysis also applies to dismissals without prejudice for a party's violation of a court order or rule.  *See, e.g., Romaguera v. Trust Mort'g, LLC*, 238 So. 3d 394, 395-96 (Fla. Dist. Ct. App. 2018) (holding that the defendant is a prevailing party when the court dismissed the case due to the plaintiff's failure to serve an exhibit and witness list); *Valcarcel*, 54 So. 3d at 990-91 (finding the defendant to be the prevailing party when the court dismissed the complaint as a sanction for violating Florida Rule of Civil Procedure 1.080(b)).[3]

In the case at bar, the Court dismissed the case for Plaintiff's failure to abide by the Court's Order Granting Plaintiff's Motion to Withdraw as Counsel [D.E. 45].  Because Plaintiff failed to obtain counsel, the Court dismissed "the Amended Complaint for failure to prosecute" without prejudice pursuant to Rule 41(b).  [D.E. 56, at 5.]  The Court did not grant Plaintiff leave to amend. [*Id.*]

---

[3] By contrast, when a court dismisses an action for lack of standing or lack of subject matter jurisdiction, Florida courts do not acknowledge the defendant as the prevailing party.  *See, e.g., Deutsche Bank Trust Co. Ams. v. Page*, 274 So. 3d 1116, 1119 (Fla. Dist. Ct. App. 2019) (en banc) ("NO STANDING = NO ATTORNEY'S FEES"); *Mitchell v. Beach Club of Hallandale Condo. Ass'n, Inc.*, 17 So. 3d 1265, 1267 (Fla. Dist. Ct. App. 2009) (holding that the defendant "did not 'prevail' where the complaint was dismissed on jurisdictional grounds without prejudice"). Similarly, when a plaintiff's complaint is dismissed with leave to amend, the defendant is not a prevailing party.  *See, e.g., Shaw v. Schlusemeyer*, 683 So. 2d 1187, 1188 (Fla. Dist. Ct. App. 1996) (concluding that the defendant was not entitled to prevailing party fees because the "dismissal order did not bring the litigation to an end").

Medterra CBD, LLC
Motion for Attorney's Fees

Whether viewed through the lens of a violation of the Order Granting Plaintiff's Motion to Withdraw as Counsel, or as a failure to prosecute under Rule 41(b), Florida law holds that Medterra is the prevailing party.

### D.     <u>Plaintiff Filed its Claim of Misappropriation in Bad Faith</u>

While this Court dismissed Plaintiff's case prior to reaching the merits, the evidence demonstrates that Plaintiff filed and advanced this case in bad faith. "Bad faith" for purposes of FUTSA has been subjected to minimal judicial interpretation. In *Knights Armament Co. v. Optical Systems Technology, Inc.*, No. 07-CV-1323-Orl, 2012 WL 3932863 (M.D. Fla. Aug. 20, 2012), one of the few cases to address the "bad faith" language in section 688.005, the court looked to other federal decisions interpreting the Uniform Trade Secrets Act. The court then applied a two-pronged test to determine bad faith: "(1) that plaintiff's claims were objectively specious or frivolous, and (2) that there is evidence of subjective misconduct." *Id.* at *5. Pursuant to this analysis, "[o]bjective misconduct exists where there is a complete lack of evidence supporting Plaintiff's claims," while "[s]ubjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." *Id.* (citation omitted).

### 1.     <u>Plaintiff's Claims Were Objectively False</u>

Plaintiff's claims in this case were both objectively and subjectively specious. The key allegations supporting Plaintiff's claim that Medterra misappropriated Plaintiff's trade secrets are in paragraphs 19 and 20 of the Amended Complaint:

> Throughout March and April of 2018, HCRMG transmitted via email from its principal office in Palm Beach County, Florida to EcoNatura at its principal office in Collier County, Florida, various confidential and proprietary information (sic) including a wholesale pricing matrix for HCRMG's Pharmalieve product line and the ingredient list and formula for HCRMG's CBD-based pain cream ("CBD Cream") to be produced by EcoNatura and manufactured by Rejuvenol.

Medterra CBD, LLC
Motion for Attorney's Fees

[D.E. 5, ¶ 19.]  Plaintiff further alleged that "EcoNatura produced the CBD Cream via starting with HCRMG's proprietary formula as a base and adding some additional ingredients to enhance the texture and viscosity of the product, with the finished product manufactured by Rejuvenol at its New York Laboratory."  [D.E. 5, ¶ 20.]

These allegations form the basis of Plaintiff's later claim that it "entrusted Medterra, EcoNatura, Rejuvenol and NoXeno with highly sensitive confidential information including, without limitation, the formula for HCRMG's proprietary CBD Cream." [D.E. 5, ¶ 62.]  According to Plaintiff, Defendants then "misappropriated" the information "by continuing to use same outside of the parameters of any business relationship with HCRMG."  [D.E. 5, ¶ 64.]

As demonstrated by two major flaws, Plaintiff's allegations above lacked any merit whatsoever.  First, Plaintiff never "transmitted by email" any "secret formula" for a CBD cream to EcoNatura in March or April 2018.  As set forth in the Declaration of Jama Russano, managing member of EcoNatura, Plaintiff never sent EcoNatura any such e-mails.  Instead, Russano used EcoNatura's proprietary formula as the "base" for the CBD-infused cream the two companies planned to manufacture and distribute. (Exhibit 1.)  Thus, Plaintiff's allegation that Medterra used ***Plaintiff's*** trade-secret cream formulation was made in bad faith.

Second, in manufacturing the cream sold to Medterra, Rejuvenol only ever used the base formula that Jama Russano at EcoNatura developed as part of the Ruby-Blue Bunny line – long before Plaintiff began doing business with Medterra in 2018.  (*See* Exhibit 2, ¶¶ 8-12.)  Further, Russano developed that formulation prior to EcoNatura's relationship with Plaintiff.  (Exhibit 1; Exhibit 2, ¶¶ 11-13.)  Because Rejuvenol never manufactured any cream formulation from Plaintiff, and Rejuvenol's manufactured cream was the sole cream product that Medterra

Medterra CBD, LLC
Motion for Attorney's Fees

purchased from Plaintiff, Plaintiff's claim that Medterra misappropriated ***Plaintiff's*** cream formulation was in bad faith.

2.   <u>Plaintiff Knew or Should Have Known That Its Allegations Were False</u>

Plaintiff knew or should have known about the falsity of its allegations. First, Plaintiff searched for the e-mails its principals exchanged with EcoNatura. In its Rule 26(a) disclosures, Plaintiff identified "Email correspondence between HCRMG and EcoNatura . . . concerning the production, manufacturing, sale and shipment of the CBD Cream primarily based upon HCRMG's formula," yet it produced no such documents to any of the Defendants. (Exhibit 3, at 4.) (Emphasis added). While Plaintiff produced 83 e-mails to Rejuvenol in response to its requests – including certain e-mails between Plaintiff and EcoNatura – **Plaintiff never produced any of the alleged e-mails referenced in paragraph 19 of the Amended Complaint that would prove its allegations of misappropriation**. Accordingly, the presumptive inference one may draw from Plaintiff's failure to produce these alleged e-mails is that they do not exist.

This presumptive inference is buttressed by all the Defendants' various attempts to obtain these e-mails in discovery. Rejuvenol served Plaintiff with a similar request for production seeking "[c]ommunications between Plaintiff and any Defendant pertaining to Plaintiff's alleged trade secrets, the formulas for Plaintiff's products, orders, invoices, sales, complaints regarding product, ingredients, packaging, and advertising." (Exhibit 4, ¶ 2.) In response, Plaintiff agreed to produce "any responsive documents." (*Id.*) Plaintiff produced the 83 e-mails referenced above in response to Rejuvenol's requests, but Plaintiff never produced any emails or other document that identified the claimed "secret formula" over which it filed this action.

Medterra sought similar discovery regarding ***Plaintiff's*** "secret formula" and the allegation that Plaintiff "entrusted" Medterra with that formula. (Exhibit 5, ¶¶ 13-15, 19.) After granting

8

Medterra CBD, LLC
Motion for Attorney's Fees

Plaintiff a multi-week extension of time to respond to its requests, Medterra received nothing.  On April 22, 2020, the day Plaintiff's discovery responses were due, Plaintiff's former counsel requested another, last-minute extension of time.  While the undersigned agreed to the second extension, counsel for Medterra clearly stated to Plaintiff's former counsel that the evidence of Plaintiff's alleged trade-secreted cream formulation must be produced after the second extension expired.  Instead, two days later, on April 24, 2020, Plaintiff's former counsel filed its motion to withdraw as counsel, never having produced the claimed "trade secret" at issue in this case. Despite two of the Defendants requesting this same critical evidence from the start of discovery, Plaintiff never produced this evidence.

Second, Plaintiff's prior counsel admitted that Plaintiff conducted no pre-suit analysis to compare its alleged "proprietary formula" for a CBD-infused pain cream with the CBD-infused cooling cream that Medterra sells.  Plaintiff's failure to conduct any pre-suit analysis is evident for two reasons.  On March 23, 2020, Plaintiff filed a motion for extension of the discovery cutoff and pretrial deadlines.  Among other grounds for the extension, Plaintiff sought more time to allow "its chemistry expert [to] test any samples produced by Medterra" in discovery.  [*See* D.E. 36, at 5.]  Plaintiff had ample access to Medterra's cooling cream because it initially sold EcoNatura's formulation to Medterra on a white label basis. Further, Medterra's cooling cream was sold to the general public. Yet, Plaintiff did not have any chemistry expert, or even an employee, perform any testing that compared Plaintiff's purported formulation to Medterra's cream.  Further, during a conference call among all counsel to this case on April 15, 2020, Plaintiff's former counsel admitted to defendants' counsel that Plaintiff had neither tested Medterra's CBD-infused cooling cream, nor compared its composition to Plaintiff's purported "proprietary formula."  Given that EcoNatura neither received, nor used, any "secret formula" from Plaintiff in producing Medterra's

9

Medterra CBD, LLC
Motion for Attorney's Fees

CBD-infused cooling cream, any test by Plaintiff inevitably would have shown that Medterra's cooling cream was not derived from Plaintiff's alleged formula. *See* (Exhibit 1, ¶¶ 7, 12; Exhibit 2, ¶¶ 9-15, 20). *See Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed Cir. 1992), *cited with approval in Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1212 (11th Cir. 2010) (concluding, in a patent infringement case, that the plaintiff "appears to have undertaken a reasonable pre-filing inquiry in preparing for and commencing litigation" by testing "a sample of the allegedly infringing product" and "commission[ing] further chemical analyses").

In sum, because of the naked allegation in paragraph 19 of the Amended Complaint to which Plaintiff was unable to identify or produce an iota of evidence to support, and that Plaintiff completely failed to make any effort to comply with its obligation to complete a pre-suit investigation before filing the instant trade-secret lawsuit, Plaintiff's claims were undeniably filed and pursued in bad faith. Accordingly, Medterra is entitled to an award of its reasonable attorney's fees from Plaintiff under FUTSA.

## III.   AMOUNT OF REASONABLE ATTORNEY'S FEES

### A.   Identity, Experience, and Qualifications for Each Timekeeper

Adam Rabin is a founding partner at McCabe Rabin, P.A. He is a 1993 graduate of the University of Miami School of Law and has been admitted to practice in Florida since 1993. Mr. Rabin is Florida Bar Board Certified in Business Litigation. He is the former chair of the Southern District of Florida Bench & Bar Conference and is admitted to practice in the Eleventh Circuit, the Southern District of Florida, the Middle District of Florida, and the District of Colorado. Mr. Rabin's practice is centered on business, securities, and litigation under the False Claims Act. He devotes approximately 40% of his time to federal practice.

Medterra CBD, LLC
Motion for Attorney's Fees

Robert Glass is a partner at McCabe Rabin, P.A.  He is a 2007 graduate of the University of Virginia School of Law and a former clerk to U.S. Senior District Judge Kenneth Marra.  He was admitted to practice in Florida in 2008.  He is also admitted to practice in the District of Columbia, the Eleventh Circuit, the Southern District of Florida, the Middle District of Florida, the Northern District of New York, and the Southern District of New York.  Mr. Glass's practice centers on business litigation and False Claims Act cases.  He devotes approximately half of his time to federal practice.

**B.     Hours Reasonably Expended and Rates Claimed**

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776., 781 (11th Cir. 1994).[4]  This calculation, called the "lodestar," produces an "objective estimate" of what a reasonable attorney's fee should be.  *Norman*, 836 F.2d at 1299.  The movant "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Id.* at 1303.

In defending this case, Medterra seeks an award of $58,535.00 in attorney's fees.  The following chart outlines the time spent by Messrs. Rabin and Glass, as well as the claimed hourly rate:

| Name | Hours Billed | Hourly Rate | Lodestar |
|---|---|---|---|
| Adam Rabin | 57.7 | $425.00 | $24,522.50 |
| Robert Glass | 138.5 | $325.00 | $45,012.50 |
| Less Courtesy Credits Provided to Client on Invoices | | | ($11,000.00) |
| | | **TOTAL** | $58,535.00 |

---

[4] Florida courts also apply the federal lodestar approach to determine the reasonableness of an attorney's fee. *Fla. Patients' Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150 n.5 (Fla. 1985).  Because no conflict exists between the two procedures, the Court may apply federal law. *See Schafler v. Fairway Park Condo. Ass'n*, 324 F. Supp. 2d 1302, 1311-12 (S.D. Fla. 2004), *aff'd* 147 F. App'x 113 (11th Cir. 2005); *Emmedue, S.p.A. v. Nextech Bldg. Sys., Inc.*, No. 08-21216, 2010 WL 1372417, at *4 (S.D. Fla. Mar. 17, 2010) (applying federal law to determine the reasonableness of an attorney's fee award in a diversity case).

Medterra CBD, LLC
Motion for Attorney's Fees

Attached as Exhibit 6 is an itemized invoice setting forth the specific tasks completed by attorneys Adam Rabin and Robert Glass.

**C.**      **The Attorney's Fees Claimed by Medterra's Counsel are Reasonable**

The Court "is itself an expert on the question" of the reasonableness of a claim for attorney's fees and "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citation omitted). Thus, while expert testimony regarding reasonableness may be relevant, such evidence is not required. *See, e.g., Schafler v. Fairway Park Condo. Ass'n*, 324 F. Supp. 2d 1302, 1311 (S.D. Fla. 2004) (finding that expert testimony is not required to award fees); *Squire v. Geico Gen. Ins. Co.*, No. 12-23315, 2013 WL 474705, at *3 (S.D. Fla. Feb. 7, 2013) (considering a fee request without expert testimony).

As the Supreme Court has counseled, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

     1.      Counsels' Hourly Rates are Reasonable

In *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292 (11th Cir. 1988), the Eleventh Circuit explained that the Court must look to the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation" to determine a reasonable hourly rate. *Id.* at 1299; *accord In re Estate of Platt*, 586 So. 2d 328, 334 (Fla. 1991) ("A *reasonable hourly rate* takes into account the rate charged in the community by lawyers of comparable skill, experience, and reputation *for similar services.*"). The "relevant market" is the "place where the case is filed." *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). The fee applicant's burden is to produce "satisfactory evidence that

Medterra CBD, LLC
Motion for Attorney's Fees

the requested rate is in line with prevailing market rates," regardless of what the attorney's actual billing rate is. *Norman*, 836 F.2d at 1299. This burden may be met "by producing either direct evidence of rates charged under similar circumstances *or opinion evidence* of reasonable rates." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (emphasis in original). In determining a reasonable hourly rate, the Court may also look to the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[5] *See Loranger*, 10 F.3d at 781 n.6; *Norman*, 836 F.2d at 1299-1300.

In this case, Medterra seeks an hourly rate for Attorney Rabin of $425 per hour and Attorney Glass of $325 per hour. Courts in the Southern District of Florida have regularly approved rates of between $375 and $550 per hour for attorneys with comparable levels of experience. *See Leader Global Solutions, LLC v. Yankelewitz*, No. 15-23628-CIV-KMM, 2019 WL 5260268, at *1 (S.D. Fla. Aug. 6, 2019) (concluding that a rate of $425 per hour for an attorney with 16 years of experience as reasonable); *Nelson v. BP Exploration & Prod., Inc.*, 18-62537-CIV-BB, 2019 WL 2864768, at *2 (S.D. Fla. July 2, 2019) (finding a rate of $425 per hour as reasonable for an attorney with "ten years' experience litigating cases in both state and federal courts"); *B/E Aerospace, Inc. v. Travelers Cas. & Surety Co. of Am.*, No. 16-81293-CIV-DMM, 2017 WL 9288915, at *3 (S.D. Fla. Aug. 29, 2017) (finding a rate of $475 per hour for a partner with 18 years of experience to be reasonable); *Strategic Marketing, Inc. v. Great Blue Heron Software, LLC*, No. 15-80032-CIV-BB, 2017 WL 1284773, at *6 (S.D. Fla. Feb. 16, 2017) (finding

---

[5] Those factors include: (1) the time and labor required on the case; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney from taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

Medterra CBD, LLC
Motion for Attorney's Fees

a rate of $375 per hour reasonable for attorneys with 8 and 14 years of experience, respectively);

*Certain Underwriters at Lloyd's v. Coastal States Mort'g Corp.*, No. 13-62374-CIV-WPD, 2015

WL 11181972, at *3 (S.D. Fla. Oct. 2, 2015) (approving rate of $450 per hour for partners with

25 years of experience); *Pretka v. Kolter City Plaza II, Inc.*, No. 09-80706-CIV-KAM, 2015 WL

11256556, at *2 (S.D. Fla. July 13, 2015) (finding an hourly rate of $560.00 to be "appropriate for

a partner with nearly twenty years of experience").

2.   Counsel's Time Spent on This Case Was Reasonable

Counsel for Medterra spent approximately 196.2 hours working on this case.  As the

Eleventh Circuit has cautioned, "[f]ee applicants must exercise what the Supreme Court has termed

'billing judgment.'"  *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir.

1999).  As such, Medterra has "exclude[d] from [its] fee application[] 'excessive, redundant, or

otherwise unnecessary [hours],'" which are hours that "would be unreasonable to bill to a client

and therefore to one's adversary."  *Id.* (citation omitted).

This case did not progress extensively beyond the preliminary stages.  Nevertheless,

Medterra spent substantial time: (1) preparing a motion to dismiss and reply; (2) preparing written

discovery; (3) preparing a motion for sanctions pursuant to Rule 11; (4) interviewing witnesses;

and (5) preparing this fee application.[6]

Under these circumstances, the time spent on this case by Attorneys Rabin and Glass is

reasonable.

---

[6] Under Florida law, time spent determining entitlement to fees is generally compensable, while
time spent litigating the amount of attorney's fees is not, absent specific statutory language to the
contrary.  *See State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 833 (Fla. 1993); *accord
McMahan v. Toto*, 311 F.3d 1077, 1085 (11th Cir. 2002).

Medterra CBD, LLC
Motion for Attorney's Fees

       3.      **Medterra is Entitled to an Award of All of Its Fees in This Case, as Plaintiff's Claims Arise From the Same Core Facts and Legal Theory**

Finally, Medterra should be compensated for all of its attorney's fees in defending this case, as all of Plaintiff's claims in this case are inextricably intertwined. As this Court has previously recognized, where only one claim offers prevailing party attorney's fees, yet the claims are based on a "common core" of facts and related legal theories, the Court may award attorney's fees for time spent litigating the entire case. In *Osorio v. State Farm Bank, F.S.B.*, No. 11-61880-DMM, 2013 WL 12085502, at *3 (S.D. Fla. Feb. 1, 2013), the Court explained as follows: "Where, as here, 'a party is entitled to an award of fees for only some of the claims involved in the litigation, i.e., because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the relationship between the claims to determine the scope of the fee award.'" (Citation omitted.)

In *Osorio*, a third-party plaintiff sought to recover its attorney's fees on several claims asserted against a third-party defendant. Only one claim – breach of contract – provided for the recovery of prevailing party attorney's fees. the Court found that the third-party plaintiff's claims against the third-party defendant "share a 'common core' of facts and are based on related legal theories" because each claim arose "from the credit card agreement, attempts to collect from [the third-party defendant] pursuant to the agreement, and [third party-defendant's] misrepresentations in the credit card application." *Id.* Thus, the Court found the third-party plaintiff could recover its reasonable fees in prosecuting all of its claims.

Here, this analysis produces a similar result. In addition to Count I for violation of FUTSA, Plaintiff alleged claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (Count II) and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201

Medterra CBD, LLC
Motion for Attorney's Fees

*et seq.* (Count III).  As to Count II, claims under DTSA "largely mirror" claims under FUTSA. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1312 n.13 (11th Cir. 2020) ("DTSA creates a federal cause of action that largely mirrors FUTSA.").  Plaintiff's allegations in Count II are almost identical to the allegations supporting Count I, save the addition of an allegation regarding "interstate commerce" in Count II.  [D.E. 5, ¶ 70.]  Moreover, in resolving Medterra's Motion to Dismiss, the Court applied the same analysis in resolving the sufficiency of Plaintiff's allegations in both counts.  [*See* D.E. 40, at 10-14.]

Count III also involves the same "common core" of facts and related legal theories. Specifically, as the Court concluded, Plaintiff alleged that "the manner in which MedTerra ultimately obtained Plaintiff's CBD-based cream qualifies as a distinct and actionable deceptive business act." [D.E. 40, at 15.]  Put simply, Count III is predicated on the same underlying conduct as Counts I and II – the purported misappropriation and misuse of Plaintiff's "secret formula" for CBD cream.  Medterra's defense of Count III was identical to its defenses in Counts I and II – it never obtained or used Plaintiff's formula.

Accordingly, the Court should award Medterra its reasonable attorney's fees for defending all three claims in this case, as the claims arise out of the same set of facts and involved the same defense.

Medterra CBD, LLC
Motion for Attorney's Fees

**D.**   **Terms of Medterra's Fee Agreement With Counsel**

Pursuant to Local Rule 7.3(a)(4), the terms of the fee agreement between Medterra and undersigned counsel required Medterra to pay counsel an hourly fee for all time expended in the case, at the rates set forth above.

**IV.**   **CONCLUSION**

For the foregoing reasons, Medterra asks that the Court find it is entitled to an award of prevailing party fees from Plaintiff Healthcare Resources Management Group, LLC, in the amount of $58,535.00.

Dated: July 20, 2020                      Respectfully submitted,

**MCCABE RABIN, P.A.**
1601 Forum Pl., Ste. 201
West Palm Beach, FL 33401-8102
Office: 561-659-7878

By: /s/Adam T. Rabin
Adam T. Rabin
arabin@mccaberabin.com
Florida Bar No. 985635
Robert C. Glass
Florida Bar No. 052133
rglass@mccaberabin.com

*Counsel for Defendant MedTerra CBD, LLC*

Medterra CBD, LLC
Motion for Attorney's Fees

## **Verification**

I verify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Dated: July 20, 2020

ADAM T. RABIN

Medterra CBD, LLC
Motion for Attorney's Fees

## **Certificate of Good Faith Conference**

I HEREBY CERTIFY that a draft of the foregoing Motion was sent by U.S. Mail and e-mail to Healthcare Resources Management Group, LLC c/o Sam Genovese and Mercy Romero, on June 22, 2020, pursuant to Local Rule 7.3(b).  In addition to Rejuvenol's counsel's multiple e-mails to Plaintiff in an effort to coordinate a joint conference between Plaintiff and Defendants' counsel, the undersigned counsel attempted to confer by e-mail with Sam Genovese and Mercy Romero – the managers of Healthcare Resources Management Group, LLC – on June 22 and July 6, 2020.  On July 8, 2020, undersigned counsel attempted to contact Mr. Genovese by telephone. He did not return the phone call.

On July 10, 2020, Mr. Genovese, instead, responded by e-mail, indicating that he disputed Medterra CBD, LLC's claim to entitlement to attorney's fees. On July 13, 2020, Mr. Genovese copied the undersigned counsel on a follow-up e-mail directed to Rejuvenol's counsel in which Mr. Genovese indicated that Plaintiff objects to paying any of the Defendants' attorney's fees.

In his July 10 and July 13, 2020 e-mails, however, Mr. Genovese failed to provide any "reasonable particularity" as to any specific time entries he believed were not taxable.

Medterra CBD, LLC
Motion for Attorney's Fees

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of a Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 /s Adam T. Rabin____
Adam T. Rabin
Fla. Bar No. 985635
arabin@mccaberabin.com

20

Medterra CBD, LLC
Motion for Attorney's Fees

SERVICE LIST

Healthcare Resources Management Group, LLC
v.
Econatura All Healthy World, LLC, *et al.*

U.S. District Court, Southern District of Florida
No. 9:19-CV81700-DMM/DLB

Healthcare Resources Management Group, LLC
(Via U.S. Mail)
1288 N.W. 16th Street
Boca Raton, FL 33486

Adam T. Rabin
arabin@mccaberabin.com
e-filing@mccaberabin.com
Robert C. Glass
rglass@mccaberabin.com
McCabe Rabin, P.A.
1601 Forum Place, Ste. 201
West Palm Beach, FL 33401
561.659.7878
*Counsel for Medterra CBD, LLC*

Eric Lee
lee@leeamlaw.com
Lee & Amtzis, P.L.
5550 Glades Road, Ste. 401
Boca Raton, FL 33431
*Counsel for Rejuvenol Laboratories, Inc.*

Barry E. Witlin
barrywitlin@gmail.com
witlinlaw@gmail.com
Barry W. Witlin, P.A.
7805 SW 6th Court
Plantation, FL 33324
*Counsel for Econatura All Healthy World, LLC
and Noxeno Health Sciences, Inc.*